DocuSign Envelope ID: 9C8A599D-B3E6-4566-8800-FB12B0712A76
Case 3:22-cv-06057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 1 of 19
Pageid#: 368
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

# Funding Circle

**Dear Jack,**
Congratulations on being approved for a small business loan with Funding Circle! We look forward to seeing your business grow.

**Your Information**
Business Name: **PIEDMONT POWER SPORTS, INC.**
Owner Name: **Jack Rickett**

In the following two pages, you will find important summary details about your Funding Circle loan. The complete terms, conditions and other provisions of your business loan are set forth in your Funding Circle Loan Agreements (the Business Loan and Security Agreement and Continuing Guaranty), immediately following.

| AMOUNT FUNDED & REPAYABLE | |
|---|---|
| **Loan Amount** The principal amount of the loan | **$300,000.00** |
| **Disbursement Amount** The funds provided after deduction of the Origination Fee | **$282,030.00** |
| **Term** | **60 months** |
| **Monthly Payments** Beginning on the date one month after Funding Circle funds the loan. | **$7,946.50** |
| **Total Repayment Amount** 100% of the scheduled payments of principal and interest payable over the life of your loan. | **$476,790.00** |
| **Prepayment Penalty** | **None**. You only pay interest for the time you borrow (Section 7 of the Business Loan and Security Agreement provides more detail). |

| RATES & FEES | |
|---|---|
| **Origination Fee** A non-refundable fee covering our costs of evaluating and originating your loan. | **5.99%** $17,970.00 |
| **Interest Rate** | **19.99%** |
| **Annual Percentage Rate (APR)** | **22.97%** |

| OTHER IMPORTANT GOVERNING PROVISIONS | |
|---|---|
| **Guarantor(s)** Each Guarantor individually and unconditionally guaranties the loan as detailed in the Continuing Guaranty | Jack Rickett |

85 2nd Street Suite 400 • SAN FRANCISCO, CA 94105
Our Mission: To Build a Better Financial World

LCF 001364

DocuSign Envelope ID: 9C8A599D-B3E6-4556-8800-FB12B0712A76
Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 2 of 19   Pageid#: 369
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160



| | |
|---|---|
| **Collateral**<br>Funding Circle takes a security interest in assets of the business | Your loan is secured by a blanket lien on all of your business assets (other than any real property), as more fully described in Section 11 of the Business Loan and Security Agreement, below. |
| **Arbitration** | Your Loan Agreements contain arbitration provisions requiring that any dispute be submitted to binding arbitration rather than to a court. |
| **What Law Applies** | California (except for borrowers in South Dakota whose agreements will be governed by the laws of the State of South Dakota), and federal law as to arbitration. |

DocuSign Envelope ID: 9C8A599D-B3E6-4596-8800-FB12B0712A76
Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 3 of 19
Pageid#: 370

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

**Funding Circle**

**Lender:**
FC MARKETPLACE, LLC
San Francisco, CA

**Borrower:**
PIEDMONT POWER SPORTS, INC.
12555 James Madison Hwy
Orange, VA 22960

| "Loan Amount" | "Interest Rate" | "Annual Percentage Rate (APR)" | "Closing Date" | "First Payment Date" | "Maturity Date" | "Monthly Repayment Amount" | "Origination Fee" |
|---|---|---|---|---|---|---|---|
| $300,000.00 | 19.99% per year | 22.97% | The date Lender funds the Loan | The date one calendar month after the Closing Date | The 60 month anniversary of the Closing Date | $7,946.50 | 5.99% |

# BUSINESS LOAN AND SECURITY AGREEMENT

This **BUSINESS LOAN AND SECURITY AGREEMENT** (this "Agreement") is entered into as of the last date written below (the "Effective Date") between Borrower and Lender.

**1.     DEFINITIONS.** All capitalized words and terms shall have the meanings set forth in the Loan Agreements.

**2.     COMMON GOVERNING PROVISIONS.** The Common Governing Provisions attached hereto are hereby incorporated by reference into this Agreement.

**3.     THE LOAN; PROMISE TO PAY.** Subject to the terms of this Agreement (including the Common Governing Provisions) and the other Loan Agreements, Borrower may receive a commercial loan (the "Loan") from Lender. Borrower hereby unconditionally promises to pay and to perform, observe and comply with when due all of the obligations, including without limitation, the Loan Amount plus interest at the Interest Rate, other Indebtedness (as defined herein), and all other obligations under the Loan Agreements (the "Obligations"). Borrower will pay these amounts in U.S. dollars. All payments to be made by Borrower under this Agreement shall be made without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction.

**4.     INTEREST.** The Loan will bear interest at the Interest Rate from the Closing Date until the date that the Loan Amount, together with all accrued and unpaid interest, any applicable fees or charges due under the Loan Agreements, is paid in full. Interest shall accrue on a daily basis and will be calculated on a 30/360 interest method. Any amount added to the Loan Amount pursuant to the Loan Agreements shall bear interest at the Interest Rate.

**5.     REPAYMENT AND MATURITY DATE.** Borrower will repay the Loan by making payments of principal, accrued interest and other charges due under the Loan on payment due dates that occur on the same day of each successive month (each such date, a "Payment Due Date") beginning on the First Payment Date, set forth above, and ending on the last Payment Due Date in which Borrower has paid all of the outstanding principal and interest and any other charges owed under the Loan Agreements. If a Payment Due Date occurs (a) on a date which does not repeat every month (e.g., the 31st), such Payment Due Date for that month will be the last day of such month or (b) on a Saturday, Sunday, or holiday when banks are generally closed, such Payment Due Date will be automatically adjusted to occur on the next day that is a business day. Notwithstanding any other provision of this Agreement, Borrower shall pay any and all amounts outstanding on this Agreement on the Maturity Date. Borrower understands and acknowledges that the last or final Monthly Repayment Amount may deviate in amount from the Monthly Repayment Amount due to adjustments for rounding, and to reflect early, late, missed or unscheduled payments made by Borrower and received by Lender during the term of the Agreement.

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian.
COPY VIEW

**6.     APPLICATION OF PAYMENTS**. All payments received by Lender shall be generally applied in the following order: first to accrued interest, second to any unpaid principal balance due under this Agreement, and third to any late charges or other fees due under this Agreement. Lender may modify this order of application of payments. Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due shall not constitute nor be deemed to constitute a waiver of the unpaid amounts nor an accord and satisfaction.

**7.     PREPAYMENTS**. Borrower may make payments early, in whole or in part, without penalty or premium at any time. If Borrower wishes to prepay the Loan in full, Borrower agrees to pay the unpaid principal balance due under this Agreement, plus unpaid accrued interest, fees and expenses (if any) through the date on which such payment is made. Any partial prepayment will be applied in the order provided in Section 6 and does not alter any subsequent Monthly Prepayment Amount or Payment Due Date.

**8.     FEES AND CHARGES**.

**(a)     Origination Fee**. Borrower agrees to pay to Lender the Origination Fee and that Lender shall deduct the Origination Fee from Borrower's Loan Proceeds at the time of disbursement. As a result, the proceeds delivered to Borrower at the time of disbursement will be less than the full Loan Amount. Borrower acknowledges and agrees that the Origination Fee will be considered part of the principal of the Loan, is subject to the accrual of interest, and is non-refundable.

**(b)     Late Charges**. Borrower agrees that Lender may assess a late charge equal to five percent (5.0%) of the Monthly Payment Amount or the maximum amount allowable by law, whichever is less, if Lender has not received any scheduled payment on the applicable Payment Due Date.

**9.     WAIVER BY BORROWER**. Borrower waives any rights to require Lender (a) to demand payment of amounts due; (b) to give notice that amounts due have not been paid; and (c) to provide any official certification of loan payments. Borrower agrees that Lender may take any other action that Lender deems necessary to protect its interests under this Agreement, without notice to or consent by Borrower or any other person.

**10.    TERM**. This Agreement shall be effective as of the Effective Date and shall continue in full force and effect until such time as all indebtedness has been paid in full, including principal, interest and any other amounts required to be paid under the Loan Agreements ("Indebtedness"), or until such time as the Parties may agree in writing to terminate this Agreement. Borrower waives any statute of limitations applicable to this Agreement.

**11.    GRANT OF SECURITY INTEREST**. For valuable consideration, the adequacy and receipt of which is hereby acknowledged, Borrower grants to Lender, as collateral security for the payment and performance in full of all Indebtedness, a lien on and security interest in and to all of the right, title and interest of Borrower in, to and under the following property, wherever located, and whether now existing or hereafter arising or acquired from time to time (collectively, the "Collateral"), as such terms may be defined in the Uniform Commercial Code as of the Effective Date:

**(a)**     all money, Accounts, Deposit Accounts; Documents, Instruments, Chattel Paper, Letters of Credit, Letter-of- Credit Rights, Investment Property, Commercial Tort Claims, and Supporting Obligations;

**(b)**     all Equipment, Goods, Inventory and Fixtures;

**(c)**     all patents, patent applications, trademarks, trade names, service marks, logos, copyrights, trade secrets and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark or Copyright Offices and all renewals, reissues and extensions thereof, together with any and all rights born from or related thereto, including but not limited to royalties or proceeds thereof or rights to sue for violations thereof.

**(d)**     all motor vehicles covered by a certificate of title law of any state;

**(e)**     all General Intangibles; and

**(f)**     all books and records, customer lists, files, programs, and other materials and records relating to the Collateral and any General Intangibles at any time evidencing or relating to any of the foregoing;

DocuSign Envelope ID: 9C8A599D-B3E6-4506-8800-FB12B0712A76
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian.
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160
Funding Circle

**(g)** to the extent not covered by subsections (a) through (f) of this Section 11, all other assets, personal property and rights of Borrower, whether tangible or intangible, all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to Borrower from time to time with respect to any of the foregoing.

NOTWITHSTANDING ANYTHING STATED TO THE CONTRARY IN THIS SECTION 11, LENDER DISCLAIMS ANY SECURITY INTEREST IN REAL PROPERTY, OR HOUSEHOLD OR OTHER CONSUMER GOODS OR ASSETS OR ANY FORM OF COMPENSATION OF GUARANTOR IN WHICH LENDER IS FORBIDDEN BY LAW FROM TAKING A SECURITY INTEREST.

**12. CONDITIONS PRECEDENT TO FUNDING.** Lender's obligation to make the Loan under the Loan Agreements shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in the Loan Agreements, including the following specific conditions precedent:

**(a) Closing Documents and Other Loan Documents.** Lender may request additional materials from Borrower and Borrower will have delivered to Lender these additional materials, in form and substance satisfactory to Lender.

**(b) Loan Agreements.** Borrower will have provided to Lender a validly executed Business Loan and Security Agreement and related guaranties of the Loan in favor of Lender, duly executed by each Guarantor (as defined below), on Lender's forms, and in the amount and under the terms set forth in those guaranties.

**(c) Information Verification.** Borrower has produced appropriate documentation or other proof as may be requested by Lender to verify any information submitted by Borrower during the process of applying for the Loan, and/or Lender has conducted verification through a third party and/or credit reporting agencies, which Borrower agrees Lender has the right to do.

**(d) Representations and Warranties.** The representations and warranties set forth in the Loan Agreements (including Section 13 of this Agreement) are true and correct.

Notwithstanding the foregoing, any waiver of or Borrower's failure to meet any of the conditions precedent in this Section 12(a) will not provide any basis for Borrower to contest the enforceability of the Loan Agreements.

**13. BORROWER'S REPRESENTATIONS, WARRANTIES AND COVENANTS.** Borrower represents, warrants and covenants to Lender, as of the Effective Date, the Closing Date and at all times the Loan exists or any Loan Agreement is in effect, as follows:

**(a) LOAN PROCEEDS. THE LOAN CONSTITUTES A BUSINESS LOAN FOR BUSINESS AND COMMERCIAL PURPOSES ONLY. BORROWER WILL USE ALL PROCEEDS FROM THE LOAN SOLELY FOR BORROWER'S BUSINESS OPERATIONS AND NOT FOR ANY PERSONAL, FAMILY, HOUSEHOLD OR ANY OTHER CONSUMER PURPOSES. IN ADDITION, BORROWER COVENANTS THAT IT WILL USE PROCEEDS FROM THE LOAN SOLELY FOR THE PURPOSES DESCRIBED IN THE APPLICATION FOR THE LOAN AND SUMMARIZED IN THE LOAN AGREEMENTS.**

**(b) Organization and Authorization to do Business.** Borrower is and will remain duly organized, validly existing, and in good standing under the laws of the state in which it is organized. Borrower is and will remain duly authorized to transact business in all states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state and local jurisdiction in which Borrower is doing business.

**(c) Authorization; No Violation.** Borrower's execution, delivery and performance of the Loan Agreements has been duly authorized by Borrower and does not nor will not (i) conflict with, result in a violation of, or constitute a default under any provision of Borrower's articles of incorporation or organization or bylaws, any agreement or other instrument binding upon Borrower, or any law, governmental regulation, court decree, or order applicable to Borrower; or (ii) require the consent or approval of any other person or entity.

**(d) Financial Information.** Each of Borrower's financial statements truly and completely disclose Borrower's financial condition as of the date of such statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in the financial statements delivered by Borrower to Lender.

DocuSign Envelope ID: 9C8A599D-B3E6-4506-8800-FB12B0712A76
Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 6 of 19
Pageid#: 373

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

Funding Circle

**(e)     Title and Lien Priority**. Borrower holds and will maintain good and marketable title, free and clear of all liens and encumbrances and has not entered into or granted any security agreements or permitted the filing or attachment of any security interests on or affecting any and all Collateral, except for those (i) created by this Agreement, (ii) securing indebtedness permitted under this Agreement, or (iii) specifically permitted in writing by Lender. Borrower shall defend Lender's rights in any Collateral against the claims and demands of all other persons. The Loan Agreements create a valid security interest in favor of Lender in the Collateral.

**(f)     Litigation and Claims**. No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**(g)     Taxes, Charges and Liens**. Borrower i) has filed all of Borrower's tax returns and reports required to be filed and paid in full all taxes, assessments and other government charges; and ii) will pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, and liens, of every kind and nature, imposed upon Borrower or Borrower's properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might result in the attachment of a lien or charge upon any of Borrower's properties, income, or profits, except those currently being or to be contested in good faith by the Borrower.

**(h)     Financing Statements and Other Recordations; Perfection of Security Interest; Power of Attorney**. Borrower authorizes Lender to file financing statements and other filings or recording documents with respect to Collateral (including any amendments thereto, or continuation or termination statements thereof), without the signature or other authorization of Borrower, in such form and in such offices as Lender reasonably determines appropriate to perfect, or maintain the perfection of, Lender's security interest in such Collateral. Borrower approves, authorizes and ratifies any filings or recordings (including any made prior to the Closing Date) made by or on behalf of Lender in connection with the perfection of Lender's security interest in any Collateral. At the request of Lender, Borrower additionally agrees to sign all other documents that are necessary to perfect, protect and continue Lender's security interest in any Collateral and to use best efforts to cooperate with and assist Lender in connection with the foregoing. Upon request of Lender, Borrower will deliver to Lender any and all of the documents evidencing or constituting the Collateral and Borrower will note Lender's interest upon any and all Chattel Paper and instruments if not delivered to Lender for possession by Lender. Lender may require Borrower to pay all fees and costs involved. Borrower irrevocably appoints Lender as Borrower's attorney in fact to execute any documents necessary to exercise remedies under the Loan Agreements. Lender may file a copy of this Agreement as a financing statement.

**(i)     Notices to Lender**. Borrower will promptly inform Lender in writing:

(i)     of all material adverse changes in the financial condition of Borrower or any Guarantor, including, but not limited to, the loss of or change in any Guarantor's employment and any material change in any financial or personal information provided by Borrower or any Guarantor to Lender during the loan application process, whether such information was provided in written or oral form,

(ii)     of the occurrence of any Event of Default under the Loan Agreements or the occurrence of any condition or event having or expected to have a material adverse effect on the business, operations or financial condition of Borrower;

(iii)     of all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower, any Guarantor, or any Collateral; and

(iv)     prior to any (A) change in Borrower's name; (B) change in Borrower's assumed business name(s); (C) change in the management or ownership of Borrower; (D) change in Borrower's authorized signer(s); (E) change in Borrower's principal office address; (F) change in Borrower's state of organization; (G) conversion of Borrower to a new or different type of business entity; or (H) change in any other aspect of Borrower that directly or indirectly relates to any agreements between Borrower and Lender. No change in Borrower's name, type of business entity, or state of organization will take effect until after Lender has received notice and provided approval of such change.

**(j)     Examination of Books, Records and Collateral**. Upon the reasonable request of Lender, Borrower will promptly furnish to Lender and allow examination and audit of Borrower's (i) books and records; (ii) federal and other governmental

DocuSign Envelope ID: 9C8A599D-B3E6-4506-8800-FB12B0712A76
Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 7 of 19
Pageid#: 374
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian.
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

tax returns, as prepared by a tax professional; (iii) balance sheet and income statement prepared by Borrower on an annual basis; (iv) policies and certificates of insurance; (v) records of payment of taxes, assessments, governmental and other charges; and (vi) such additional financial and operational information and statements as Lender may request from time to time. All furnished materials shall be certified by Borrower as being true and correct. Borrower will permit (and where necessary enable) Lender at any reasonable time to examine and inspect any Collateral and Borrower's other properties.

**(k)** **Insurance**. Borrower will at all times maintain fire and other risk insurance, public liability insurance and such other insurance as deemed commercially reasonable given Borrower's operations, Collateral and properties.

**(l)** **Other Agreements**. Borrower will comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party. Borrower will notify Lender immediately in writing of any default in connection with any other such agreements.

**(m)** **Operations**. Borrower will maintain operations in the ordinary course of Borrower's business and will not engage in activities substantially different than those in which Borrower is presently engaged. Borrower will maintain executive and management personnel with substantially the same qualifications and experience as the Borrower presently has. Borrower will not cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity or dissolve.

**(n)** **Compliance with Governmental Requirements**. Borrower will comply with all laws, ordinances and regulations, now or hereafter in effect, applicable to the conduct of Borrower's properties, businesses and operations, and to the ownership, production, disposition, or use of all Collateral.

**(o)** **Indebtedness**. Borrower will not create, incur or assume indebtedness for borrowed money, including cash advances, merchant cash advances, or capital leases, other than (i) trade or credit card debt incurred in Borrower's ordinary course of business, (ii) Indebtedness or other indebtedness to Lender or Funding Circle USA, Inc. and its affiliates, (iii) indebtedness reasonably necessary to finance the purchase of specific equipment reasonably related to Borrower's primary business, or (iv) indebtedness previously disclosed to, and specifically permitted in writing by, Lender; *provided* that, in each case, no Event of Default has occurred and is continuing or would result after giving effect to the incurrence of any such indebtedness.

**(p)** **Removal or Disposition of Collateral**. Except in the ordinary course of Borrower's business, Borrower will not remove from its current location, sell or otherwise transfer or dispose of Collateral. A sale in the ordinary course of Borrower's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. All proceeds from any disposition of Collateral in violation of this section shall be held in trust for Lender and shall not be commingled with any other funds; *provided*, *however*, this requirement shall not constitute consent by Lender to any disposition. Upon receipt, Borrower shall immediately deliver any such proceeds to Lender.

**14.** **EVENTS OF DEFAULT**. Each of the following shall constitute an "Event of Default" under this Agreement:

**(a)** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or any other Loan Agreement;

**(b)** any representation, warranty, or statement or any financial data or other information made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or any other Loan Document is false, inaccurate or misleading in any material respect, either at the time made or furnished or (except for financial data) at any time thereafter;

**(c)** the occurrence of any event or condition that would give any holder of any indebtedness of Borrower (other than the Indebtedness) the right to declare the entire amount of such indebtedness immediately due and payable, regardless of whether such right has actually been exercised;

**(d)** the occurrence of any event of default under any agreement between Borrower and Lender, regardless of whether Lender has actually exercised its rights upon default under such agreement;

**(e)** the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower;

DocuSign Envelope ID: 9C8A599D-B3E6-4506-8800-FB12B0712A76
Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 8 of 19
Pageid#: 375

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

Funding Circle

**(f)** this Agreement or any other Loan Agreement ceases to be in full force and effect to create or retain a valid and perfected security interest or lien in any Collateral at any time and for any reason;

**(g)** commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any Collateral or the decline or depreciation in value of Collateral which, in the sole opinion of Lender, impairs repayment of the Loan or causes Collateral to be insecure;

**(h)** any change in the ownership interest in Borrower of twenty-five percent (25%) or more;

**(i)** a material adverse change occurs in the financial condition of Borrower or any Guarantor, or Lender has reason to believe, in good faith, that the prospect of payment or performance of the Indebtedness is impaired; or

**(j)** any of the preceding events occurs with respect to any Guarantor or any Guarantor that is a natural person dies or becomes incompetent, or any Guarantor revokes or disputes the validity of, or liability under, any guaranty of any of the Indebtedness of Borrower under the Loan Agreements.

**15.    RIGHTS AND REMEDIES OF LENDER UPON DEFAULT**. Subject to applicable law, if an Event of Default occurs under any Loan Agreement, Lender may exercise at any time thereafter any one or more of the following rights and remedies:

**(a)    Accelerate Indebtedness**. Lender may declare the entire Indebtedness immediately due and payable, without prior notice of any kind to Borrower.

**(b)    Reporting of Defaulted Loan.**  Lender reserves the right to submit a negative credit report regarding Borrower or any Guarantor to one or more credit reporting agencies, including, as appropriate, consumer reporting agencies in accordance with applicable law.

**(c)    Assemble Collateral**. Lender may require Borrower to assemble Collateral and make it available to Lender or deliver to Lender all Collateral and any documents relating thereto. Lender also shall have full power to enter upon the property of Borrower to take possession of and remove Collateral.

**(d)    Sell Collateral**. Lender shall have full power to sell, lease, transfer, or otherwise deal with Collateral or proceeds thereof in Lender's own name or that of Borrower. Lender may sell Collateral at public auction or private sale. All expenses relating to the disposition of Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling Collateral, will become a part of the Indebtedness and will be payable on demand, with interest at the Interest Rate from date the expenditure is incurred until repaid.

**(e)    Appoint Receiver**. Lender shall have the right to have a receiver appointed to take possession of all Collateral, with the power, as applicable, to protect and preserve Collateral, to operate Collateral preceding foreclosure or sale, and to collect the rents from Collateral and apply the proceeds thereof, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of all Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**(f)    Collect Revenues; Apply Accounts**. Lender, either itself or through a receiver, may collect the payments, rents, income and revenues from any Collateral. Lender may at any time in its sole discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as any Collateral consists of Accounts, General Intangibles, insurance policies, Instruments, Chattel Paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Borrower, receive, open and dispose of mail addressed to Borrower; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify Account Debtors and obligors on any Collateral to make payments directly to Lender.

DocuSign Envelope ID: 9C8A599D-B3E6-4586-8800-FB12B0712A76    Case 3:22-cv-00057-NKM-JCH    Document 54-3    Filed 06/28/23    Page 9 of 19   Pageid#: 376

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian.
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

Funding Circle

**(g)** **Obtain Deficiency**. If Lender chooses to sell any Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness after application of all amounts received from the exercise of the rights provided in the Loan Agreements. Borrower shall be liable for a deficiency even if the transaction described in this Section 14(g) is a sale of Accounts or Chattel Paper.

**(h)** **Other Rights and Remedies**. Lender shall have all the rights and remedies of a secured creditor under the provisions of the UCC, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**(i)** **Election of Remedies**. All of Lender's rights and remedies, whether evidenced by this Agreement or any other Loan Document, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under this Agreement or any other Loan Document, after Borrower's failure to perform, shall not affect Lender's right to declare a default or exercise any remedies. Borrower waives any and all presentment, demand, notice of dishonor, protest and all other notices and demands in connection with the enforcement of Lender's rights under the Loan Agreements and Borrower consents to and waives notice of release of any Guarantor or of any Collateral, notwithstanding anything contained herein or in the Loan Agreements to the contrary.

**16.** **EXPENDITURES BY LENDER**. If any action or proceeding is commenced that would materially affect Lender's interest in any Collateral, or if Borrower fails to comply with any provision of this Agreement or any other Loan Document, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any other Loan Document, Lender, on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Agreement from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (a) be payable on demand; or (b) be added to the balance of the Agreement and be apportioned among and be payable with any installment payments to become due during the remaining term of the Agreement.

**17.** **ACCOUNT AUTHORIZATION; PAYMENTS**. Borrower authorizes Lender to (a) disburse the Loan proceeds by Automated Clearing House ("ACH") transfer to Borrower's designated account and (b) debit Borrower's designated account (including any subsequent designated account identified to Lender by Borrower) by ACH transfer for the amount of each payment due on each Payment Due Date. Borrower may elect to make payments by check by contacting loanquestions@fundingcircle.com or by regular mail at FC Marketplace, LLC, 85 2nd Street, 4th Floor, San Francisco, California 94105 (or such other address as Lender may designate from time to time).

**18.** **USURY SAVINGS**. It is the intention of the Parties to comply strictly with all applicable usury laws. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates such law, and Borrower is entitled to the benefit of such law, such charge shall be reduced to the extent necessary to eliminate such violation. The amounts (if any) previously paid to Lender in excess of the permitted amounts will be applied by Lender to reduce the principal amount of the Indebtedness. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute interest, will be deemed to be allocated and spread ratably over the stated term of the Agreement. Such allocation and spreading will be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Agreement.

**19.** **ACCORD AND SATISFACTION**. Borrower agrees not to send Lender payments marked with any language such as "paid in full," "without recourse," or language to similar effect. If Borrower sends a payment so marked, Lender may accept it without losing any of Lender's rights under this Agreement or any other Loan Document, and Borrower will remain fully obligated to pay all amounts due under the Loan Agreements.

**20.** **STATE NOTICES**.

**(a)** **NOTICE TO BORROWERS IN NORTH DAKOTA, ONLY.** Lender holds a North Dakota Money Broker License, No. MB102840. MONEY BROKERS ARE LICENSED AND REGULATED BY THE DEPARTMENT OF FINANCIAL

INSTITUTIONS, 2000 SCHAFER STREET, SUITE G, BISMARCK, NORTH DAKOTA 58501-1204. THE DEPARTMENT OF FINANCIAL INSTITUTIONS HAS NOT PASSED ON THE MERITS OF THE CONTRACT AND LICENSING DOES NOT CONSTITUTE AN APPROVAL OF THE TERMS OR OF THE BROKER'S ABILITY TO ARRANGE ANY LOAN. COMPLAINTS REGARDING THE SERVICES OF MONEY BROKERS SHOULD BE DIRECTED TO THE DEPARTMENT OF FINANCIAL INSTITUTIONS.

**(b)    NOTICE TO BORROWERS IN SOUTH DAKOTA, ONLY**.  Lender holds a South Dakota Money Lending License, No. MYL.3054.  Money lending licenses are issued by the South Dakota Department of Labor and Regulation, Division of Banking, 1601 North Harrison Avenue, Suite 1, Pierre, South Dakota, 57501, (605) 773-3421.  Complaints regarding lending practices should be directed to the South Dakota Department of Labor and Regulation, Division of Banking.

**(c)    NOTICE TO BORROWERS IN VERMONT FOR CO-BORROWER OR JOINT BORROWER LOANS, ONLY. NOTICE TO CO-SIGNER:  YOUR SIGNATURE ON THE AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN.  IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**(d)    NOTICE TO BORROWERS IN WASHINGTON, ONLY.** ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

[*Signature page follows*]

DocuSign Envelope ID: 9C8A599D-B3F6-4085-88C0-FDL2D0712A76
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160
THIS IS A COPY
This is a copy View of the Authoritative Copy held by the designated custodian.

**Funding Circle**

By signing this Agreement, Borrower acknowledges that Borrower (i) has received a copy of this Agreement, (ii) has read and understands all of the provisions of this Agreement, and (iii) agrees to be bound by the terms of this Agreement.

**BORROWER:**
**PIEDMONT POWER SPORTS, INC.**

By: *[signature]*
Name: JACK RICKETT
Title (e.g., President, CEO, etc.): President

Date: 3/16/2020

**THIS LOAN IS MADE BY FC MARKETPLACE, LLC, A CALIFORNIA FINANCING LAW LICENSEE. THAT LICENSE IS ADMINISTERED BY THE CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT. FOR INFORMATION OR COMPLAINTS, CONTACT THE CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT AT 1-866-275-2677 OR https://dbo.ca.gov/.**

COPY VIEW

85 2nd Street Suite 400 • SAN FRANCISCO, CA 94105
Our Mission: To Build a Better Financial World

LCF 001374

DocuSign Envelope ID: 9C8A-599D-B3E64085-88C0-FDL2B0712A76
Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 12 of 19
Pageid#: 379
THIS IS A COPY
This is a copy View of the Authoritative Copy held by the designated custodian
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

**Funding Circle**

**Lender:**
FC MARKETPLACE, LLC
San Francisco, California

**Borrower:**
PIEDMONT POWER SPORTS, INC.
12555 James Madison Hwy
Orange, VA 22960

**Guarantor:**
Jack Rickett
22282 Monrovia Rd Orange, VA 22960

**Guarantor:**

**Guarantor:**

**Guarantor:**

**Guarantor:**

# CONTINUING GUARANTY

This **CONTINUING GUARANTY** (this "Guaranty") is made and entered into as of the date last written below by each Guarantor named above (individually a "Guarantor") in favor of Lender.

**1.     DEFINITIONS.** All capitalized words and terms shall have the meanings set forth in the Loan Agreements.

**2.     COMMON GOVERNING PROVISIONS**. The Common Governing Provisions attached hereto are hereby incorporated by reference into this Guaranty.

**3.     GUARANTOR ACKNOWLEDGMENT**. Guarantor acknowledges that (a) Borrower has requested that Lender make a loan (the "Loan") to Borrower evidenced by the Business Loan and Security Agreement, to be executed and delivered by Borrower to Lender concurrently with this Guaranty, and (b) Lender has required that Guarantor execute and deliver this Guaranty to Lender as a condition precedent to making the Loan.

**4.     OBLIGATIONS GUARANTIED**. Guarantor unconditionally guaranties and promises (a) to pay to Lender on demand, in lawful U.S. money, all Obligations (as defined in the Business Loan and Security Agreement above) to Lender of Borrower and (b) to perform all undertakings of Borrower in connection with the Obligations. All payments to be made by Guarantor under this Guaranty shall be made without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction.

**5.     CONTINUING NATURE; REVOCATION; REINSTATEMENT**. This Guaranty is in addition to any other guaranties of the Obligations, is continuing and covers all Obligations, including those arising under successive transactions which continue or increase the Obligations from time to time, renew all or part of the Obligations after they have been satisfied, or create new Obligations. Revocation by one or more signers of this Guaranty or any other guarantors of the Obligations shall not (a) affect the obligations under this Guaranty of a non-revoking Guarantor, (b) apply to Obligations outstanding when Lender receives written notice of revocation, or to any extensions, renewals, readvances, modifications, amendments or replacements of such Obligations, or (c) apply to Obligations, arising after Lender receives such notice of revocation, which are created pursuant to a commitment existing at the time of the revocation, whether or not there exists an unsatisfied condition to such commitment or Lender has another defense to its performance. All of Lender's rights pursuant to this Guaranty continue with respect to amounts previously paid to Lender on account of any Obligations which are thereafter restored or returned by Lender, whether in an insolvency proceeding of Borrower or for any other reason, all as though such amounts had not been paid to Lender; and Guarantor's liability under this Guaranty (and all its terms and provisions) shall be reinstated and revived, notwithstanding any surrender or cancellation of this Guaranty. Lender, at its sole discretion, may determine whether any amount paid to it must be restored or returned; *provided*, *however*, that if Lender elects to contest any claim for return or restoration, Guarantor agrees to indemnify and hold Lender harmless from and against all costs and expenses, including reasonable attorneys' fees, expended or incurred by Lender in connection with such contest. If any insolvency proceeding is commenced by or against Borrower or Guarantor, at Lender's election, Guarantor's obligations under this Guaranty shall immediately and without notice or demand become due and payable, whether or not then otherwise due and payable.

6.  **GUARANTOR AUTHORIZATION**. Guarantor authorizes Lender, without notice and without affecting Guarantor's liability under this Guaranty, to (a) renew, compromise, extend, accelerate, release, subordinate, waive, amend and restate, or otherwise amend or change any of the terms of the Obligations; (b) accept delinquent or partial payments on the Obligations; (c) take or not take security or other credit support for this Guaranty or for all or any part of the Obligations, and exchange, enforce, waive, release, subordinate, fail to enforce or perfect, sell, or otherwise dispose of any such security or credit support; (d) apply proceeds of any such security or credit support and direct the order or manner of its sale or enforcement as Lender, at its sole discretion, may determine; and/or (e) release or substitute Borrower or any guarantor or other person or entity liable on the Obligations.

7.  **FCRA CONSUMER CREDIT REPORTING NOTIFICATION**. LENDER MAY REPORT INFORMATION TO CREDIT BUREAUS IF BORROWER IS IN DEFAULT. LENDER MAY REPORT NEGATIVE INFORMATION ABOUT THE BORROWING ENTITY'S OUTSTANDING OBLIGATIONS ON GUARANTOR'S PERSONAL CREDIT REPORT. SPECIFICALLY, LENDER MAY REPORT INFORMATION ABOUT GUARANTOR'S ACCOUNT TO CREDIT BUREAUS. DEFAULTS ON THE ACCOUNT GUARANTOR GUARANTEES MAY BE REFLECTED IN GUARANTOR'S CREDIT REPORT. IF YOU HAVE ANY QUESTIONS REGARDING FCRA CONSUMER CREDIT REPORTING NOTIFICATIONS OR ANY ITEMS RELATING TO YOUR CREDIT REPORT, YOU MAY CONTACT US AT CREDITREPORTING@FUNDINGCIRCLE.COM.

8.  **WAIVERS**. Guarantor waives (a) notice of acceptance of this Guaranty; (b) all rights to require Lender to proceed against Borrower, or any other guarantor, or proceed against, enforce or exhaust any security for the Obligations or to marshal assets or to pursue any other remedy in Lender's power whatsoever; (c) all defenses arising by reason of any disability or other defense of Borrower, the cessation for any reason of the liability of Borrower, any defense that any other indemnity, guaranty or security was to be obtained, any claim that Lender has made Guarantor's obligations more burdensome or more burdensome than Borrower's obligations, and the use of any proceeds of the Obligations other than as intended or understood by Lender or Guarantor, and each and every other defense, whether existing under statute, at law or in equity, that Guarantor may or might have as to its respective rights, undertakings, liabilities and obligations under this Guaranty; (d) all presentments, demands for performance, notices of nonperformance, protests, notices of dishonor, notices of the existence or creation of new or additional Obligations and all other notices or demands to which Guarantor might otherwise be entitled; (e) all conditions precedent to the effectiveness of this Guaranty; (f) all rights to file a claim in connection with the Obligations in an insolvency proceeding filed by or against Borrower; (g) all rights to require Lender to enforce any of its remedies; and (h) until the Obligations are satisfied or fully paid with such payment not subject to return: (i) all rights of subrogation, contribution, indemnification or reimbursement, (ii) all rights of recourse to any assets or property of Borrower, or to any collateral or credit support for the Obligations, (iii) all rights to participate in or benefit from any security or credit support Lender may have or acquire, and (iv) all rights, remedies and defenses Guarantor may have or acquire against Borrower.

9.  **GUARANTOR TO KEEP INFORMED**. Guarantor warrants having established with Borrower adequate means of obtaining, on an ongoing basis, such information as Guarantor may require concerning all matters bearing on the risk of nonpayment or nonperformance of the Obligations. Guarantor assumes sole, continuing responsibility for obtaining such information from sources other than from Lender. Lender has no duty to provide any information to Guarantor until Lender receives Guarantor's written request for specific information in Lender's possession and Borrower has authorized Lender to disclose such information to Guarantor.

10. **SUBORDINATION**. All obligations of Borrower to Guarantor which presently or in the future may exist are hereby subordinated to the Obligations and any performance thereon received by Guarantor only as a trustee for Lender.

11. **DUE AUTHORIZATION**. Where Borrower is a corporation, partnership or other entity, Lender need not inquire into or verify the powers of Borrower or authority of those acting or purporting to act on behalf of Borrower, and this Guaranty shall be enforceable with respect to any Obligations Lender grants or creates in reliance on the purported exercise of such powers or authority.

12. **ASSIGNMENTS**.

    **(a)  By Lender**. In the event of an assignment of the Obligations, or any part thereof, the rights and benefits under this Guaranty may be transferred with such Obligations. Guarantor waives notice of any transfer or assignment of the Obligations or any part thereof.

**(b)** **By Borrower**. All covenants and agreements by or on behalf of Guarantor contained in this Guaranty shall bind Guarantor's successors and assigns and shall inure to the benefit of Lender. Guarantor shall not, however, have the right to assign Guarantor's rights or delegate its duties under this Guaranty without the prior written consent of Lender or any authorized agent thereof.

**(c)** **Disclosure of Information**. Lender may sell or offer to sell the Obligations or interests therein to one or more purchasers, or potential purchasers. Lender may disclose to any such prospective or actual assignee, participant, or purchaser of all or part of the Obligations any and all information Lender now has or hereafter acquires concerning Guarantor and this Guaranty.

**13.** **MARRIED GUARANTORS**. By executing this Guaranty, a Guarantor who is a natural person and who is married agrees that recourse may be had against his or her separate and community property for all his or her obligations under this Guaranty. Further, Guarantor agrees that the obligations under this Guaranty are incurred in the interest of the marriage.

**14.** **NOTICE TO GUARANTORS IN ILLINOIS AND OHIO, ONLY.** Notwithstanding anything in the Loan Agreements to the contrary, the Loan shall not be secured by (i) an assignment of Guarantor's salary, wages, commissions or other compensation for services or (ii) Guarantor's household furniture or other goods used for Guarantor's personal, family or household purposes.

[*Signature page follows*]

DocuSign Envelope ID: 9C8A599D-B3F64565-88C0-FBL2B0712A76  Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 15 of 19
Pageid#: 382

THIS IS A COPY
This is a Copy View of the Authoritative Copy held by the designated custodian
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

**Funding Circle**

By signing below, each Guarantor acknowledges having received a copy of this Guaranty and having made each waiver contained in this Guaranty with full knowledge of its consequences.

**GUARANTOR**:

**By**: *[signature: J Rickett]*
—6377F17810CE4A5...

**Name**: JACK RICKETT

**Date**: 3/16/2020


**GUARANTOR**:

**By**:

**Name**:

**Date**:


**GUARANTOR**:

**By**:

**Name**:

**Date**:


**GUARANTOR**:

**By**:

**Name**:

**Date**:


**GUARANTOR**:

**By**:

**Name**:

**Date**:

DocuSign Envelope ID: 9C8A599D-B3F64065-88C0-FDL2B0712A76
Case 3:22-cv-00057-NKM-JCH  Document 54-3  Filed 06/28/23  Page 16 of 19
Pageid#: 383
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160
THIS IS A COPY
This is a copy View of the Authoritative Copy held by the designated custodian

# COMMON GOVERNING PROVISIONS

These **COMMON GOVERNING PROVISIONS** (these "Provisions") are hereby incorporated into each of the **'BUSINESS LOAN AND SECURITY AGREEMENT,'** and **'CONTINUING GUARANTY,'** as may be amended from time to time (each a "Loan Agreement" and, together with any other agreements between Borrower and/or Guarantor and Lender related to the Loan, collectively the "Loan Agreements") and are agreed to by Borrower(s) and/or Guarantor(s) (as defined herein) upon execution of each Loan Agreement respectively.

1. **CONSTRUCTION**. As used herein, all references to "include", "includes" or "including" shall be deemed to be followed by the words "without limitation". All references to "Borrower(s) and/or Guarantor(s)" shall mean only those Borrowers and/or Guarantors as are reasonably intended to be bound by the applicable provision(s). All references to Lender shall include any registered successors and assigns or any authorized agent thereof. Each of Borrower or Guarantor, and Lender may be referred to as a "Party", and collectively the "Parties." Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.

2. **CLERICAL ERRORS**. In the event Lender at any time discovers that any Loan Agreement contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender and within a reasonable time prescribed therein, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error(s). In the event that Borrower fails to re-execute any documents that are necessary to correct any such error(s) within the prescribed time, Borrower hereby irrevocably authorizes Lender to unilaterally correct such error(s) and consents in advance to the correction of such error(s).

3. **AMENDMENTS**. The Loan Agreements constitute the entire understanding and agreement of the Parties as to the matters set forth in the Loan Agreements and supersede all prior understandings or agreements with respect thereto. Except with reference to Section 2 (Clerical Errors) above, no alteration of or amendment shall be effective unless given in writing and signed by the Party or Parties sought to be charged or bound by the alteration or amendment.

4. **SOPHISTICATED PARTIES.** Each of the Parties acknowledge and agree that it is a financially sophisticated party who is, or has had the opportunity to be, represented by counsel and the Loan Agreements are the result of negotiations between the Parties, and such counsel if applicable. Accordingly, neither the Loan Agreements nor any ambiguities herein shall be construed more strictly against either Party.

5. **NO WAIVER**. No Party shall be deemed to have waived any rights under the Loan Agreements unless such waiver is given in writing and signed by the waiving Party, and such waiver shall not constitute continuing waiver or consent to subsequent or additional instances where such waiver or consent is required. No delay, omission, or partial exercise of any right or remedy under the Loan Agreements shall operate as a waiver of the full exercise of such right or remedy or any other right or remedy.

6. **SEVERABILITY**. All provisions of the Loan Agreements are to be construed as if including the language "except as prohibited by applicable law," or "unless otherwise provided or required by law," (as applicable). If any provision of the Loan Agreements is found to be illegal, invalid, or unenforceable for any reason: 1) that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance; 2) if feasible, the unenforceable provision shall be considered modified so that it becomes legal, valid and enforceable; or if the unenforceable provision cannot be so modified, it shall be considered deleted from the Loan Agreements; and 3) unless otherwise required by law, the unenforceable provision of the Loan Agreements shall not affect the legality, validity or enforceability of any other provision of the Loan Agreements.

7. **CONSENT TO ELECTRONIC RECORD AND SIGNATURE**. The Parties expressly agree to conduct transactions under the Loan Agreements by electronic means (including, without limitation, with respect to execution, delivery, storage, transfer, and enforceability of these electronic Loan Agreements). The Loan Agreements may be executed by electronic signature.

8. **TIME IS OF THE ESSENCE**. Time is of the essence in the performance of the Loan Agreements.

---

DocuSign Envelope ID: 9C8A599D-B3F64065-88C04FB12B0712A76
Case 3:22-cv-00057-NKM-JCH  Document 54-3  Filed 06/28/23  Page 17 of 19
Pageid#: 384

Funding Circle

THIS IS A COPY
This is a copy View of the Authoritative Copy held by the designated custodian
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

9.  **ATTORNEYS' FEES; EXPENSES**. Borrower and Guarantor agree to pay upon demand all costs of Lender, including attorneys' fees, arbitration, insolvency proceeding and court fees, collection costs, and any and all other expenses incurred in connection with the enforcement of the Loan Agreements.

10. **NOTICES**. Any notice required to be given under the Loan Agreements shall be given in writing, and shall be effective when actually received by email, or when delivered to a nationally-recognized overnight courier, or, if mailed, when deposited in the U.S. mail, as first class, certified or registered mail postage prepaid. BORROWER ADDITIONALLY AGREES TO WAIVE PERSONAL SERVICE AND CONSENT TO SERVICE OF PROCESS BY REGISTERED MAIL. All notices shall be addressed to the Party to whom such notice is given:

    (i)   if to Borrower: Borrower's registered email address or its mailing address shown above;
    (ii)  if to Guarantor: Guarantor's mailing address shown above; or
    (iii) if to Lender: loanquestions@fundingcircle.com or FC Marketplace, LLC, Attn: Legal, 85 2nd Street, 4th Floor, San Francisco, California 94105.

Parties must give formal written notice to the other Parties in order to change their address. For notice purposes, Borrower and Guarantor agree to keep Lender informed at all times of their current addresses. If there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

11. **JOINT AND SEVERAL**. If more than one Borrower or Guarantor signs this Agreement, the obligations of each under the Loan Agreements are joint and several, and independent of the obligations of any other person or entity. A separate action or actions may be brought and prosecuted against any one Borrower or Guarantor, regardless of whether action is brought against the other Borrower(s) and/or Guarantor(s) and whether the other Borrower(s) and/or Guarantor(s) are joined in any such action.

12. **SUCCESSORS AND ASSIGNS**. Neither Borrower nor Guarantor shall have the right to assign Borrower's nor Guarantor's rights or delegate their duties under the Loan Agreements without the prior written consent of Lender. The Loan Agreements shall be binding upon Borrower and Guarantor and upon their successors and assigns, including any successor entity, and shall inure to the benefit of Lender.

13. **Survival of Representations and Warranties**. Borrower and/or Guarantor understands and agrees that in making the Loan, Lender is relying on all representations, warranties and covenants made by Borrower and/or Guarantor in the Loan Agreements and in any certificate or other instrument delivered by Borrower or Guarantor to Lender. Borrower and/or Guarantor further agrees that regardless of any verification made by Lender, all such representations, warranties and covenants will survive the execution of the Loan Agreements and the funding of the Loan, shall be continuing in nature, and shall remain in full force and effect until such time as all of Borrower's and/or Guarantor's obligations under the Loan Agreements shall be fully satisfied, or until the Loan Agreements shall be terminated in the manner provided in the Loan Agreements, whichever is the last to occur.

14. **GOVERNING LAW**. OTHER THAN THE ARBITRATION AGREEMENT WHICH IS GOVERNED BY FEDERAL LAW, THE LEGALITY, INTERPRETATION, AND ENFORCEMENT OF THE LOAN AGREEMENTS AND ANY CLAIM OR DISPUTE (WHETHER IN CONTRACT, TORT, OR OTHERWISE) AT ANY TIME ARISING FROM OR RELATING TO THE LOAN AGREEMENTS OR THE RELATIONSHIP OF BORROWER(S) AND/OR GUARANTOR(S) AND LENDER SHALL BE GOVERNED BY, CONSTRUED, AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF CALIFORNIA, EXCLUDING THE CHOICE OF LAW PROVISIONS THEREOF, REGARDLESS OF THE LEGAL THEORY UPON WHICH SUCH MATTER IS ASSERTED OR THE LOCATION OF BORROWER. BORROWER(S) AND GUARANTOR(S) UNDERSTAND AND AGREE THAT (A) LENDER IS LOCATED IN AND CONDUCTS ITS BUSINESS IN CALIFORNIA AS A LICENSED FINANCE LENDER, (B) LENDER MAKES ALL CREDIT DECISIONS FROM LENDER'S OFFICE IN CALIFORNIA, (C) THE LOAN IS MADE IN CALIFORNIA (THAT IS, NO BINDING CONTRACT WILL BE FORMED UNTIL LENDER RECEIVES AND ACCEPTS THE SIGNED LOAN AGREEMENTS IN CALIFORNIA), (D) FUNDS ARE DISBURSED BY LENDER FROM CALIFORNIA, AND (E) BORROWER'S PAYMENTS ARE NOT ACCEPTED UNTIL RECEIVED BY LENDER IN CALIFORNIA. BORROWER(S) AND GUARANTOR(S) UNDERSTAND THAT AGREEING TO THE APPLICABILITY OF CALIFORNIA LAW IS A MATERIAL FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THE LOAN AGREEMENTS AND THE DETERMINATION OF THE INTEREST RATE AND FEES CHARGED. INTEREST RATES AND FEES MAY BE DIFFERENT AND HIGHER THAN THE RATES AND FEES CHARGED IN OTHER STATES, INCLUDING THE STATE WHERE BORROWER OPERATES ITS BUSINESS. NOTWITHSTANDING THE ABOVE, FOR BORROWERS LOCATED IN SOUTH DAKOTA, THE LOAN AGREEMENTS WILL BE GOVERNED BY THE LAWS OF THE STATE OF SOUTH DAKOTA.

DocuSign Envelope ID: 9C8A599D-B3F64085-88C0-FDL2B0712A76
Case 3:22-cv-00057-NKM-JCH   Document 54-3   Filed 06/28/23   Page 18 of 19
Pageid#: 385
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160
THIS IS A COPY
This is a copy View of the Authoritative Copy held by the designated custodian

**15.    ARBITRATION**. EACH OF BORROWER AND/OR GUARANTOR HAS READ THIS ARBITRATION SECTION AND AGREES THAT, BY ENTERING INTO THE LOAN AGREEMENTS, IN THE EVENT OF A DISPUTE BETWEEN BORROWER AND/OR GUARANTOR AND LENDER, EACH OF THEM WAIVES CERTAIN RIGHTS, INCLUDING (i) THE RIGHT TO GO TO COURT, (ii) TO HAVE A DISPUTE HEARD BY A JURY, (iii) TO ENGAGE IN PRE ARBITRATION DISCOVERY TO THE SAME EXTENT THAT BORROWER AND/OR GUARANTOR OR LENDER COULD IN COURT, (iv) TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN A CLASS ACTION, IN COURT OR IN ARBITRATION OR (v) TO JOIN OR CONSOLIDATE CLAIMS OTHER THAN BORROWER'S AND/OR GUARANTOR'S OR LENDER'S. BORROWER AND/OR GUARANTOR HAS THE RIGHT TO REJECT THIS PROVISION, AS PROVIDED IN SUBSECTION (f) BELOW.

**(a)    Scope of Arbitration**. Any and all claims or disputes arising out of or related in any way to this Agreement, the other Loan Agreements, or the relationship between Borrower and/or Guarantor and Lender (including claims, controversies, and disputes arising prior to or after the date of the Loan Agreements and additionally to any issues as to whether any such claims, controversies, or disputes are subject to arbitration) may, at either Party's election, be subject to binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. Sections 1-6 (the "FAA"). The scope of this Section 15 is to be given the broadest possible interpretation that is enforceable.

**(b)    Individual Capacity**. Notwithstanding any language herein to the contrary, if either Party elects to arbitrate a claim, neither Party will have the right to: (i) participate in a class action in court or in arbitration, either as a class representative, class member or otherwise; (ii) act as a private attorney general in court or in arbitration; or (iii) join or consolidate claims by or against Borrower and/or Guarantor with claims by or against any other person, and the arbitrator will have no authority to conduct any such class, private attorney general or multiple-party proceeding.

**(c)    Procedure for Arbitration**. Arbitration may be heard by the American Arbitration Association, JAMS, or any other arbitration forum as both Parties may agree, and shall be conducted under the commercial rules of the arbitration forum selected. The Party initiating an arbitration shall select the forum. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitation, and shall honor all claims of privilege recognized by law. Arbitration shall take place in San Francisco, California, or in such other location as the Parties mutually agree.

**(d)    Arbitration Costs**. If Lender elects arbitration, Lender shall pay all the arbitration forum administrator's filing costs and administrative fees (other than hearing fees). If Borrower elects arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the arbitration forum selected. Each Party shall bear the expense of its own attorneys' fees.

**(e)    Authority of Arbitrator**. The arbitrator shall have full authority to grant all forms of legal or equitable relief. The arbitrator may without limitation: determine the arbitrability of a claim, authorize and order discovery, award preliminary, interim, or final equitable relief as he or she deems appropriate, consider such evidence as he or she deems reliable, and rule on issues pertaining to his or her authority and the enforceability of the Loan Agreements. Any appropriate court may enter judgment upon the arbitrator's award. The arbitrator's award will be final and binding, except for: (i) any appeal right under the FAA and (ii) claims involving more than $100,000. For claims involving more than $100,000, within fourteen (14) days after the entry of the award by the arbitrator, any Party may appeal the award to a three-arbitrator panel appointed by the arbitration forum, which will reconsider anew any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. The appealing Party will pay the appeal's cost, regardless of its outcome. However, Lender will consider any reasonable written request by Borrower for Lender to bear the cost.

**(f)    Right to Reject Arbitration**. Borrower and/or Guarantor may reject this arbitration section by mailing a special rejection letter to Lender at: FC Marketplace, LLC, Attn: Legal, 85 2nd Street, 4th Floor, San Francisco, California 94105. Borrower and/or Guarantor must sign the rejection letter, affirmatively state that Borrower and/or Guarantor do not want arbitration to apply to this transaction and provide Borrower's and/or Guarantor's name, address and telephone number. Lender must receive Borrower's and/or Guarantor's rejection notice(s) within forty-five (45) days after the Effective Date. Borrower and/or Guarantor may not reject arbitration by phone or by any method other than the method described above. Borrower's and/or Guarantor's rejection of this arbitration section will not affect any other agreement or terms with Lender.

**16.    WAIVER OF JURY TRIAL**. IRRESPECTIVE OF SECTION 15 (ARBITRATION) THE PARTIES, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, CAUSE OF ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED

DocuSign Envelope ID: 9C8A599D-B3F64685-88C04FB12B0712A76
Case 3:22-cv-00057-NKM-JCH    Document 54-3    Filed 06/28/23    Page 19 of 19
Pageid#: 386
FC ID No.: d1697e1d-9c49-451c-adf9-8d28975ae160

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian.
COPY VIEW

HEREBY. EACH PARTY REPRESENTS THAT IT HAS REVIEWED THIS WAIVER AND CONSENT. IF AND TO THE EXTENT THE FOREGOING WAIVER IS UNENFORCEABLE FOR ANY REASON IN THE APPLICABLE FORUM, EACH OF THE PARTIES HEREBY CONSENTS TO THE ADJUDICATION OF ALL CLAIMS PURSUANT TO JUDICIAL REFERENCE AS PROVIDED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638.  IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT OR TO JUDICIAL REFERENCE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638.

17.     **TRANSFER OF RIGHTS AND MAINTENANCE OF REGISTER**. Lender may, without prior notice to or consent from Borrower or Guarantor i) sell, assign, transfer or grant participations in the Loan (or any part of the Loan) or the Loan Agreements, ii) sell or subcontract the servicing rights related to the Loan, or iii) securitize the Loan or include the Loan as part of a trust. Funding Circle USA, Inc. or its designee (the "Registrar") acting solely for this purpose as irrevocably appointed agent of Borrower, shall maintain at an office located in the United States a book-entry system (the "Register") for recording the names and addresses of the original owner and any assignee or participant, and the amounts of principal and interest owing to each from time to time pursuant to the terms of the Loan Agreements and the Loan. The Register may be in electronic form. The entries of the Register shall be conclusive, and Borrower, Guarantor, the Registrar, Lender and each assignee and participant shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal and interest payments for all purposes of the Loan Agreements (notwithstanding notice to the contrary). The name of such owner in the Register shall be available to Borrower by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. The appointment of a Registrar and maintenance of a Register is intended to result in this Agreement and the Loan being at all times in "registered form" within the meaning of U.S. Treasury Regulations Section 1.871-14(c) and Sections 163(f), 871(h) and 881(c) of the Internal Revenue Code of 1986, as amended, and shall be interpreted and applied in a manner consistent therewith. The Registrar acting solely for this purpose as Borrower's irrevocably appointed agent shall be entitled to be delivered and to receive on Borrower's behalf IRS Forms W-8 and W-9 and any successor forms or similar tax forms. Notwithstanding anything to the contrary herein, any assignment, participation or other transfer in whole or in part of interests in this Agreement or the Loan shall be effective only by registration in the Register. Lender may provide, without any limitation whatsoever, to any one or more counterparty, or potential counterparty, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower also agrees that the purchasers of interests in the Loan in accordance with this Section 17 will be considered as the absolute owners of such interests and will have all the rights granted in the Loan Agreements as to such interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any holder of an interest in the Loan and unconditionally agrees that either Lender or such holder may enforce Borrower's obligations under the Loan regardless of the failure or insolvency of any other holder of any interest in the Loan. Borrower further agrees that any registered holder of interests in the Loan may enforce such interests regardless of any personal claims or defenses that Borrower may have against Lender.

The Borrower acknowledges that agreeing to this provision is a material factor in Lender's willingness to enter into the Loan Agreement and provide funding to the Borrower and without the right to sell the Loan as set forth herein, the Lender would not have funded such Loan.

[*End of agreement*]